IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **OSMAN DONALD CERRATO GONZALEZ,** c/o Maria-Vittoria G. Carminati, Esq. and Mario Williams, Esq., NDH, LLC, 4601 DTC Blvd., Suite 300, Denver, CO 80237 | **Case No.** |
| *Plaintiff,* | |
| v. | |
| **WILLIAM BARR,** in his official capacity as Attorney General of the United States; U.S. Department of Justice, 950 Pennsylvania Avenue, NW, Washington, DC 20530-0001; | **JURY TRIAL DEMANDED** |
| **CHAD WOLF,** in his official capacity as Acting Secretary of U.S. Department of Homeland Security ("DHS"); 245 Murray Lane, SW, Washington, D.C. 20528 and | |
| **JOHN DOES 1-10,** in their individual capacities as federal agents employed by the United States Customs and Border Protection ("CBP") and/or United States Immigration and Customs Enforcement ("ICE"); addresses unknown at this time. | |
| *Defendants.* | |

## COMPLAINT FOR INJUNCTIVE RELIEF ONLY

Plaintiff, OSMAN DONALD CERRATO GONZALEZ, brings this action based on

Defendants' violations of Mr. Cerrato's constitutional rights, including his right to be free

from unreasonable search and seizure, his right to both substantive and procedural due

**ORIGINAL COMPLAINT AND REQUEST FOR INJUNCTIVE RELIEF—Page 1**

process, his right to equal protection under the law, and his right to travel within the United States.

## INTRODUCTION

The U.S. Government found that (1) Plaintiff **Osman Donald Cerrato Gonzalez** had a credible fear of persecution in his home country; (2) Mr. Cerrato was legally residing in the United States; (3) Mr. Cerrato was authorized to work through 2021 and he was therefore issued a valid Social Security Card, and (4) Mr. Cerrato was undergoing asylum proceedings with a pending court date set for July 23, 2020. Despite those facts, Defendants essentially kidnapped and disappeared Mr. Cerrato by deporting him to his home country Honduras, after detaining him on July 30, 2019, without justification or probable cause, at an immigration checkpoint near El Paso, TX. Back in Honduras, where he had previously been severely beaten and terrorized by gang members for being gay and a brother to a former Honduran military officer, Mr. Cerrato's life is subject to the same terror he thought he had escaped from.

Supporting his assertion that he was essentially kidnapped and disappeared, the facts demonstrate that the Defendants failed to provide both Mr. Cerrato and the immigration court overseeing his ongoing asylum proceedings with any documentation regarding his detention or his deportation. **In fact, ICE documentation reflects that Mr. Cerrato's case is still active and that there has been no Final Order of Removal. As far as the judicial system is concerned, Mr. Cerrato is still in the country:**

| Important Case Dates | |
|---|---|
| Entry Date: | 03/09/2015 |
| Apprehension Date: | 03/09/2015 |
| Case Creation Date: | 03/11/2015 |
| Charging Document Issued - I860 : | 03/10/2015 |
| Charging Document Served : | N/A |
| A-File to Trial Attorney: | 05/15/2015 |
| Initial Book-in: | 03/11/2015 |
| Last Book-in: | 03/14/2015 |
| Final Book-out: | 06/18/2015 |
| Last Custody Review: | 06/18/2015 |
| Travel Document Requested: | N/A |
| Case Closed: | N/A |

Final Order of Removal: **No**

**But he is not, because of Defendants' unlawful conduct.** Defendants had **zero** legal authority to carry out the deportation of a lawfully residing foreign national and asylum seeker, let alone to violate his constitutional rights, including his right to be free from unreasonable search and seizure, his right to both substantive and procedural due process, his right to equal protection, and his right to travel within the United States. As such, Mr. Cerrato brings this action.

## PARTIES

### 1.

Plaintiff **Osman Donald Cerrato Gonzalez** is a foreign national and asylum seeker, currently in Honduras. Mr. Cerrato resided in the United States at the time of his unlawful deportation and was doing so legally.

### 2.

Defendant **William Barr** is the Attorney General of the United States, the most senior official in the U.S. Department of Justice ("DOJ"). He has the authority to interpret

the immigration laws and adjudicate removal cases. The Attorney General delegates this responsibility to the Executive Office for Immigration Review ("EOIR"), which administers the immigration courts and the Board of Immigration Appeals ("BIA"). He is named in his official capacity.

3.

Defendant **Chad Wolf** is the Acting Secretary of the Department of Homeland Security ("DHS"). DHS oversees both Customs and Border Protection ("CBP") and Immigration and Customs Enforcement ("ICE"). Either CBP or ICE or both detained and deported Mr. Cerrato. He is named in his official capacity.

4.

Defendants **John Does 1-10** are US federal officers or agents ("Federal Agents") who violated Mr. Cerrato's clearly established constitutional rights. These John Does seized Mr. Cerrato without probable cause and refused to provide Mr. Cerrato with paperwork or documentation regarding his deportation. Then these John Does deported Mr. Cerrato unlawfully, and at least one of these John Does is the supervisor who ordered Mr. Cerrato's unlawful deportation. At this time, and understandably, Mr. Cerrato can only identify these individuals as John Does 1 through 10 until he is able to proceed with early discovery to uncover their identities and government affiliations. Mr. Cerrato is suing John Does 1-10 in their individual capacity.

## JURISDICTION AND VENUE

### 5.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, 1350, 1361 and 5 U.S.C. § 702 et seq, 5 U.S.C. 702 and 706 (Administrative Procedure Act), and Fed. R. Civ. P. 65 (injunctive relief), because this claim arises under the US Constitution and federal statutes.

### 6.

Venue is proper in the United States District Court for the District of Columbia because the acts or omissions giving rise to the claims took place within its district, *to wit,* policies and authorizations allowing for the deportation of Mr. Cerrato emanating from the Attorney General and Department of Homeland Security, both of which are headquartered in this District. *See* 28 U.S.C. § 1391(b)(2). Further, given that Defendants may reside in several districts, that Mr. Cerrato is now out of the country, and that all Defendants reported to and took directions from Washington D.C., venue is proper where *any* Defendant is subject to the court's personal jurisdiction, which is in this District. *See* 28 U.S.C. § 1391(b)(3).

## FACTUAL AVERMENTS

I.     **Mr. Cerrato is gay and related to a former member of the Honduras military, both of which have been recognized by the US Government as bases for asylum in the United States.**

### 7.

Plaintiff Osman Donald Cerrato Gonzalez was born in Tegucigalpa, Honduras, on January 4, 1988.

8.

Mr. Cerrato is a member of the LGBT community and, as a gay man, Mr. Cerrato received constant threats while living in Honduras.

9.

According to the Human Rights Watch, "[v]iolence based on gender identity or sexual orientation is a major problem in Honduras. Several UN agencies working in Honduras have noted that violence against LGBT individuals forces them into 'internal displacement' or to flee the country in search of international protection."[1]

10.

The U.S. Department of State reported in its Honduras 2015 Human Rights Report that, "[a]s of (2015) NGOs reported 19 LGBT persons died violent deaths, compared with 13 in all of 2014, and that two of the 19 cases were in some phase of the judicial process. In 2012 the national human rights commissioner reported that 92 percent of crimes committed against LGBT persons were not investigated[]," evidencing that the US recognized membership to the LGBT community, in Honduras, as placing an individual like Mr. Cerrato at great risk.

11.

Mr. Cerrato is also the brother of Hector Antonio Rodriguez, a former member of the Honduras military. Ex. 1 at 14. Mr. Rodriguez was ordered to serve as a military

---

[1] Human Rights Watch, Honduras Events of 2018, accessible at https://www.hrw.org/world-report/2019/country-chapters/honduras.

officer in a neighborhood of Tegucigalpa, Honduras, detaining gang members and delinquents.

12.

Mr. Rodriguez, who is Mr. Cerrato's brother, was attacked by members of the gang controlling the area he patrolled. The gang members approached him and shot at him. Mr. Rodriguez survived the attack, resigned as a military officer, and thereafter stayed home with Plaintiff Mr. Cerrato. Unfortunately, this was not enough for the gang members; they began looking for Mr. Rodriguez and they did so through Mr. Cerrato.

13.

In August 2014, gang members contacted Mr. Cerrato for the first time due to this relationship to his brother, a member of law enforcement, whose efforts were interfering with gang activity. The gang members asked Mr. Cerrato where they could find his brother, Mr. Rodriguez. Mr. Cerrato said he didn't know.

14.

On September 22, 2014, Mr. Cerrato was robbed and assaulted by gang members at the bus stop on his way home, beating Mr. Cerrato in the head and back while asking him for the location of his brother, Mr. Rodriquez, who these gang members blamed for the imprisonment of their gang leader. These gang members repeatedly threatened Mr. Cerrato's life. Ex. 2 (Police Report in Honduras). Mr. Cerrato's injuries required medical attention. Ex. 3.

15.

After the gang members beat Mr. Cerrato, they began following Mr. Cerrato everywhere, patrolling Mr. Cerrato's home, and keeping a car parked in front of his house.

16.

Mr. Cerrato reported these events, including the September 22, 2014, incident to Honduras law enforcement. In his report, Mr. Cerrato told the police about the assault at his workplace and how the perpetrators stalk him each day. Ex. 2. The police report did not put an end to the stalking and harassment. Ex. 1 at 9-13.

17.

Mr. Cerrato became unable to leave home or even go to work, living in constant fear for his wellbeing and safety. Unable to go about his life in any way, Mr. Cerrato made the decision to leave the country.

18.

On approximately October 25, 2014, Mr. Cerrato left Honduras and began the long and difficult trek to the so-called "land of the free." Ex. 1 at 7.

**II.    Mr. Cerrato seeks asylum in Mexico but is nearly killed by Mexican authorities.**

19.

Before arriving to the US, Mr. Cerrato first arrived in Mexico, hoping to remain there. He lived in Mexico for four months. Ex. 1 at 2-3.

20.

While living in Mexico, the police entered Mr. Cerrato's house and interrogated Mr. Cerrato, as well as his housemates, about their country of origin. *Id.*

21.

The Mexican police falsely accused Mr. Cerrato and his housemates of being members of a drug cartel. The members of the Mexican police then brutally beat Mr. Cerrato. *Id.*

22.

Mr. Cerrato was not and has never been a member of a Mexican cartel.

23.

After the Mexican police interrogated and beat Mr. Cerrato, the Mexican police officers confiscated all of Mr. Cerrato's identification documents and threatened to kill him. *Id.*

24.

Following his encounter with the Mexican police, Mr. Cerrato left Mexico, seeking protection in the United States.

**III.    Mr. Cerrato seeks asylum in the United States and the United States Government recognizes the threats to Mr. Cerrato's life in Honduras.**

25.

On March 9, 2015, Mr. Cerrato arrived in the United States, crossing the border near Donna, Texas.

26.

On March 9, 2015, Customs Border Patrol detained Mr. Cerrato and transferred him into ICE custody. Ex. 1 at 5.

27.

While in ICE custody, Mr. Cerrato underwent his Credible Fear Interview, where he shared the facts of his persecution ("CFI"). Ex. 1.

28.

Mr. Cerrato was able to establish his "credible fear" of persecution based on family ties to a member of the military, who was being targeted by gang members, as well as his own experience being beaten by gang members. Ex. 4. In addition, Mr. Cerrato relayed his traumatic experience with Mexican authorities, who also beat him. Ex. 1 at 2-3.

29.

Mr. Cerrato passed his CFI interview, which is to say that the US Government concluded that Mr. Cerrato had established a "[c]redible fear of persecution." Exs. 1 & 4.

30.

According to the Government, "Credible Fear of Persecution" is, "[a] 'significant possibility' that [one] can establish in a hearing before an Immigration Judge that [they] have been persecuted or have a well-founded fear of persecution on account of [their]

race, religion, nationality, membership in a particular social group, or political opinion if returned to [their] country."[2]

31.

In *Matter of Acosta,* 19 I&N Dec. 211, 233-34 (BIA 1985), the Board of Immigration Appeals (BIA) held that a particular social group is a group of persons who all share a common, immutable characteristic. In *Matter of Fuentes,* 19 I&N Dec. 658, 660 (BIA 1988), the BIA held that the status of being a former police officer was in fact an immutable characteristic, as it is beyond the capacity of the asylum seeker to change. As stated above, Mr. Cerrato was explicitly assaulted, threatened, and stalked due to this relationship to his brother, a former member of the Honduran military and as such, the Government, properly found that Mr. Cerrato had a credible fear of persecution based on, inter alia, the immutable characteristic of being related to a member of the military.

**IV.    Released from ICE custody after passing his Credible Fear Interview, Mr. Cerrato gains his work permit and a merits hearing regarding his asylum applications.**

32.

On June 4, 2015, Mr. Cerrato was released from ICE custody under a $7,500 immigration bond. Ex. 5.

---

[2] USCIS, Questions & Answers: Credible Fear Screening, last accessed at https://www.uscis.gov/humanitarian/refugees-asylum/asylum/questions-answers-credible-fear-screening.

33.

On March 7, 2016, Mr. Cerrato submitted his I-589 Application for Asylum and Withholding of Removal to USCIS.

34.

After he personally moved multiple times, an Individual (Merits/Final) Immigration Court Hearing out of the Chicago Immigration Court was scheduled for Mr. Cerrato for July 23, 2020, and this court date is still pending. Ex. 6.

## V.      Mr. Cerrato gains his work permit and social security card

35.

On January 9, 2017, the Government approved Mr. Cerrato's Employment Authorization Document, also known as a "work permit." Ex. 7 (EAD valid from January 9, 2017, to January 8, 2019).

36.

On February 7, 2019, Mr. Cerrato timely submitted his Employment Authorized Document renewal application. Ex. 8.

37.

The Government also issued Mr. Cerrato a social security number and a social security card.

38.

Mr. Cerrato's request for renewal was granted and the Government authorized him to work in the United States from June 3, 2019, to June 2, 2021. Ex. 9. Mr. Cerrato, therefore, was legally in the country and authorized to work. **The Government had,**

**thereby, repeatedly re-affirmed its approval of Mr. Cerrato's presence in the country as he underwent asylum proceedings.**

39.

At no time did the US Government raise issues regarding Mr. Cerrato's presence in the United States, despite knowing full well he was in the country.

**VI.    With no basis or authority to do so, the US Government deported Mr. Cerrato back to Honduras, where he is under daily threat to his life.**

40.

On July 30, 2019, Mr. Cerrato and his fiancé, Bryan, were traveling in Texas, visiting friends, when they reached an immigration checkpoint near El Paso, TX.

41.

Defendant John Does, purportedly acting at the behest of Barr, Wolf, and the US Government, detained Mr. Cerrato.

42.

When Mr. Cerrato and Bryan explained to the Government that Mr. Cerrato had a pending court date, **Defendant John Does responded the court date was not valid and that Mr. Cerrato had no valid basis to be in the country.**

43.

Mr. Cerrato had a GPS tracker because he was still out on bond. Defendant John Does cut the GPS ankle monitor off Mr. Cerrato and shredded Mr. Cerrato's Social Security Card.

44.

Defendant John Does then detained Mr. Cerrato in a prison or jail for two nights and three days, illegally without justification or probable cause.

45.

After detaining Mr. Cerrato for two nights and three days, Defendant John Does placed Mr. Cerrato on a plane to Honduras, illegally and without justification or probable cause.

46.

Mr. Cerrato is in Honduras to this day.

47.

In Honduras, Mr. Cerrato is in constant danger. He lives in fear for his life.

48.

Because Mr. Cerrato is in Honduras, he is unable to participate in his asylum proceedings.

49.

Mr. Cerrato's deportation to Honduras has deprived him of his right to return to the United States since August 2, 2019. His deportation has also deprived him of the safety and freedom that US laws promised him.

## VII. Defendants' unlawful conduct is highlighted by their failure to properly document the events.

50.

Defendants gave no paperwork or documentation regarding Mr. Cerrato's deportation to Mr. Cerrato at the time of deportation or any time thereafter.

51.

To date, Defendants have provided Mr. Cerrato with zero documentation supporting either his detention or his deportation.

52.

**Defendants filed no paperwork with the immigration court overseeing his asylum proceedings regarding Mr. Cerrato's deportation, the reasons for his deportation, or justifying their actions.**

53.

Mr. Cerrato submitted a FOIA request to ICE regarding his unlawful deportation. ICE responded to the FOIA Request. In its response, which included documentation pertaining to Mr. Cerrato's asylum status, not only did ICE fail to provide a justification for Mr. Cerrato's deportation, but it also failed to provide an acknowledgment that it happened at all. Ex. 10.

**VIII.   There has been no Final Order of Removal for Mr. Cerrato, and ICE documentation reflects that Mr. Cerrato's case is still active.**

54.

ICE's documentation reflects that Mr. Cerrato's case is still active:

**Important Case Dates**

| | |
|---|---|
| Entry Date: | 03/09/2015 |
| Apprehension Date: | 03/09/2015 |
| Case Creation Date: | 03/11/2015 |
| Charging Document Issued - I860 : | 03/10/2015 |
| Charging Document Served : | N/A |
| A-File to Trial Attorney: | 05/15/2015 |
| Initial Book-in: | 03/11/2015 |
| Last Book-in: | 03/14/2015 |
| Final Book-out: | 06/18/2015 |
| Last Custody Review: | 06/18/2015 |
| Travel Document Requested: | N/A |
| Case Closed: | N/A |

Ex. 10.

55.

The ICE documents also state that there has been no "Final Order of Removal":

Final Order of Removal: **No**

Ex. 10.

56.

As far as the judicial system is concerned, Mr. Cerrato is still in the country.

57.

Defendants had no legal basis to deport Mr. Cerrato, evidenced by the absence of a deportation Order, Mr. Cerrato's still pending asylum hearing for July 2020, and the complete absence of documentation supporting or even evidencing the deportation.

58.

Defendants had no authority to shred Mr. Cerrato's Social Security card since Mr. Cerrato was legally in the United States, with a work permit, undergoing asylum proceedings.

59.

Defendants had no right to tamper with Mr. Cerrato's GPS since Mr. Cerrato was legally in the United States, on bond, and legally required to retain his GPS unit.

60.

Defendants actions are illegal and in violation of the laws and the Constitution of the United States, as evidenced by Mr. Cerrato's deportation without a deportation order, without an order of removal, and during the pendency of his asylum proceedings. Mr. Cerrato was lawfully within the United States, undergoing asylum proceedings, and authorized to work by the United States Government. All indicia point to lawful presence in the United States and no indicia point to illegality or bases for removal.

61.

Neither **an** Act of Congress nor probable cause authorized the detention of Mr.

Cerrato, a Honduran citizen legally in the United States, beyond the time necessary to

perform reasonable inspections at an immigration checkpoint.

## FIRST CLAIM FOR RELIEF
**Violation of the Procedural and Substantive Due Process embodied by
Fifth Amendment to the United States Constitution**
*(Against John Does 1-10 in their individual capacities)*

62.

Plaintiff repeats and incorporates by reference each and every allegation contained

in paragraphs 1 through 60 as if fully set forth herein.

63.

The Fifth Amendment to the U.S. Constitution provides that "[n]o person shall be

. . . deprived of life, liberty, or property, without due process of law." U.S. Const. amend.

V. Indeed, the Supreme Court has recognized private right of action for violations of the

Fifth Amendment Due Process Clause. Davis v. Passman, 442 U.S. 228 (1979).

64.

To state a valid claim for a violation of substantive due process, a plaintiff must

establish that the officer's actions (1) caused an injury, (2) were grossly disproportionate

to the need for action under the circumstances, and (3) were inspired by malice rather

than merely careless or unwise excess of zeal so that it amounted to an abuse of official

power that shocks the conscience. Petta, 143 F.3d at 902; *cf.* Hernandez v. United States,

757 F.3d 249, 278 (5th Cir. 2014), adhered to in part on reh'g en banc, 785 F.3d 117 (5th

Cir. 2015), <u>vacated and remanded sub nom.</u> <u>Hernandez v. Mesa</u>, 137 S. Ct. 2003, 198 L.

Ed. 2d 625 (2017)

65.

Based on the facts incorporated to support this Count, Defendants' actions as described herein violated Mr. Cerrato's constitutional rights to be free from shocking, unlawful government conduct and to also be from conduct that patently violates Mr. Cerrato's due process rights. Defendants deported Mr. Cerrato, without providing him the process he was due under governing law. Defendants conduct was grossly disproportionate to the need for action under the circumstances, given that Mr. Cerrato was legally residing in the United States, a fact known by Defendants due to them seeing, and ripping up, his social security card, and upon information and belief, due to Defendants investigating the validity of Mr. Cerrato's legal tenure in the Unites States during the three days that these Defendants held him unlawfully in prison. No wonder these Defendants did not document anything of substance regarding their conduct in relation to Mr. Cerrato. And finally, given all that, and every fact incorporated to support this Count, these Defendants' conduct of essentially kidnapping Mr. Cerrato and deporting him is shocking under modern forms of decency and constitutional norms that guide the concept of fair play in this situation. This Court should not countenance this despicable and shameless act conduct.

66.

John Does 1-10, as federal agents for either ICE or CBP, are under the authority of William Barr as US Attorney General and Chad Wolf, as Acting Secretary for DHS. Based

on the facts incorporated to support this Count, and upon information and belief, William

Bar and Chad Wolf ratified and condoned the unconstitutional conduct of John Does 1-

10's.

67.

Because Defendants violated Mr. Cerrato's rights, he is entitled to the relief

requested herein.

<u>SECOND CLAIM FOR RELIEF</u>
**Violation of the Immigration and Nationality Act,**
**Prohibition on Removal to Country**
**Where Individual Would Face Persecution or Torture; Violation of the**
**Administrative procedures act**
*(Against all Defendants)*

68.

Plaintiff repeats and incorporates by reference each and every allegation contained

in paragraphs 1 through 60 as if fully set forth herein.

69.

The Defendants' individual and collective actions, policies, and practices have

violated the asylum-seeker protection provisions of the INA, including 8 U.S.C. § 1229, 8

U.S.C. § 1231, Foreign Affairs Reform and Restructuring Act of 1998 (FARRA), Pub. L.

No. 105-277, Div. G., Title XXII, § 2242, 112 Stat. 2681-822 (Oct. 21, 1998) (codified as Note

to 8 U.S.C. 1231), and 8 C.F.R. 208.16-18 (implementing prohibition on deportation in the

Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or

Punishment).

70.

Defendants John Does 1-10, as federal agents for either ICE or CBP, are under the authority of William Barr as US Attorney General and Chad Wolf, as Acting Secretary for DHS. Based on the facts incorporated to support this Count, and upon information and belief, William Bar and Chad Wolf ratified and condoned the unconstitutional conduct of John Does 1-10's.

71.

Because Defendants violated Mr. Cerrato's rights, he is entitled to the relief requested herein.

### THIRD CLAIM FOR RELIEF
**Violation of the Administrative Procedures Act ("APA"),
5 U.S.C § 702 et seq, including 706(2)(C)**
*(Against William Barr and Chad Wolf in their official capacities)*

72.

Plaintiff repeats and incorporates by reference each and every allegation contained in paragraphs 1 through 60 as if fully set forth herein.

73.

Based on all the incorporated facts, Defendants' action of deporting constitutes a final agency action that violated Mr. Cerrato's constitutional rights and his rights protected by federal statute. The Defendants must correct this unlawful wrong immediately under the APA.

## FOURTH CLAIM FOR RELIEF
**Bivens**
**State-Created Endangerment**
*(Against John Does 1-10 in their individual capacities)*

74.

Plaintiff repeats and incorporates by reference each and every allegation contained in paragraphs 1 through 60 as if fully set forth herein.

75.

Based on the facts incorporated to support this Count, the named Defendants both created and enhanced a known danger to Mr. Cerratos life by deporting him without lawful justification to a Country, Honduras, of which the U.S. Government already recognized posed a threat of serious hard to Mr. Cerrato. Indeed, the act of deporting Mr. Cerrato is an affirmative act under the state-created danger doctrine and Defendants directed their conduct to a specific person, Mr. Cerrato, based on the facts incorporated to support this doctrine.

76.

John Does 1-10 actions are so egregious, so outrageous, that they may fairly be said to shock the contemporary conscience.

77.

Based on the facts incorporated to support this Count, and upon information and belief, William Bar and Chad Wolf ratified and condoned the unconstitutional conduct of John Does 1-10's.

78.

Because Defendants violated Mr. Cerrato's rights, he is entitled to the relief requested herein.

**FIFTH CLAIM FOR RELIEF**
**_Bivens_ Claim: unreasonable seizure/arrest/deportation**
*(Against John Does 1-10 in their individual capacities)*

79.

Plaintiff repeats and incorporates by reference each and every allegation contained in paragraphs 1 through 60 as if fully set forth herein.

80.

A *Bivens* cause of action is a judicially created counterpart to 42 U.S.C. § 1983 for claims against federal officers.

81.

**Based on the facts incorporated to support this Count, Defendants unlawfully arrested Mr. Cerrato and then unlawfully deported him.**

82.

Based on the facts incorporated to support this Count, and upon information and belief, William Bar and Chad Wolf ratified and condoned the unconstitutional conduct of John Does 1-10's of unconstitutionally arresting and deporting Mr. Cerrato.

## SIXTH CLAIM FOR RELIEF
### *Bivens* Claim: supervisory capacity
*(Against John Does 1-10 in their individual capacities)*

83.

Plaintiff repeats and incorporates by reference each and every allegation contained in paragraphs 1 through 60 as if fully set forth herein.

84.

A *Bivens* cause of action is a judicially created counterpart to 42 U.S.C. § 1983 for claims against federal officers.

85.

**Based on the facts incorporated to support this Count, at least one of Defendants John Does 1-10 was s supervisory official who condoned and ratified the conduct of the remaining John Does. At least one of these John Does also acted in his or her supervisory capacity to order and condone the known unlawful deportation of Mr. Cerrato because upon information and belief John Doe federal agents relayed to their direct report supervisor the fact that Mr. Cerrato presented a social security card and told them he had a work permit and his status could be verified, by simply looking in relevant data bases. Upon information and belief, the Supervisor John Doe did verify that Mr. Cerrato had a work permit and social security card and a pending hearing, yet despite these known facts, the supervisor John Doe ordered and condoned the unlawful detention and deportation of Mr. Cerrato, according to and based on the fact in this Count and incorporated to support this Count.** Hope v. Bureau of Prisons, 476 F. App'x 702, 705 (11th Cir. 2012).

86.

Nonsensical is any assertion that low rank border patrol federal agents essentially kidnapped and unlawfully deported Mr. Cerrato without any higher rank, supervisory official knowing and condoning this alleged unlawful conduct.

**SEVENTH CLAIM FOR RELIEF**
**(Violation of Immigration and Nationality Act)**
*(Against William Barr and Chad Wolf)*

87.

Mr. Cerrato was not deportable pursuant to 8 U.S.C. § 1227. Therefore, Defendants violated the INA when they deported Mr. Cerrato as though he was a deportable alien, even though he is not.

88.

Pursuant to the INA, asylum seekers "shall have a reasonable opportunity to examine … [and] present evidence." 8 U.S.C. § 1229a(b)(4)(B).

89.

Mr. Cerrato was, and still is, participating in asylum proceedings to which he is entitled pursuant to the Immigration and Nationality Act. Defendants' actions have interfered with Mr. Cerrato's ability to pursue his asylum claim.

90.

Mr. Cerrato's deportation during pending asylum proceedings deprived him of the opportunity to present witnesses and evidence at his asylum hearing, which is a right he has under the Immigration and Nationality Act. Mr. Cerrato cannot return to the

United States and if he attempted to do so, he would most likely be detained and then deported.

91.

Mr. Cerrato has an implied right to private action because the language of the INA grants asylum seekers a **<u>right</u>** to present evidence and witnesses at their asylum hearings.

### EIGHTH CLAIM FOR RELIEF
**Injunctive Relief**
*(Against all Defendants)*

92.

Plaintiff repeats and incorporates by reference each and every allegation contained in paragraphs 1 through 60 as if fully set forth herein.

93.

Mr. Cerrato is currently in Honduras, as a result of Defendants' actions. Mr. Cerrato must return to the United States to complete his asylum proceedings. In addition, Mr. Cerrato's life and physical well-being are in constant danger. Irreparable harm is clear and so is the continuance of that harm.

94.

Mr. Cerrato respectfully asks the Court to enjoin all Defendants and any of their various agencies from preventing Mr. Cerrato's return to the United States for the purpose of participating in his asylum proceedings.

95.

Further, Mr. Cerrato respectfully asks the Court to order Defendants to return him to the United States so that he can complete his asylum proceedings.

96.

Finally, Mr. Cerrato respectfully asks the Court to enjoin Defendants from interfering with Mr. Cerrato's asylum proceedings.

## PRAYER FOR RELIEF

Plaintiff requests that the Court enter a judgment against Defendants and award the following relief:

A.  Enter judgment in favor of Plaintiff;

B.  Award costs and attorney's fees to Plaintiff;

C.  Enter injunctive relief in Plaintiff's favor as prayed for in Plaintiff's Complaint, enjoining all Defendants and any of their various agencies from preventing Mr. Cerrato's return to the United States for the purpose of participating in his asylum proceedings and from interfering in his asylum proceedings;

D.  Order Defendants to return Mr. Cerrato to the United States; and

E.  Order all other relief that this Court deems just and proper.

> */s/ Maria-Vittoria G. Carminati*
> Maria-Vittoria G. Carminati
> Bar No.: 1016444
> NDH LLC
> 4601 DTC Boulevard
> Denver, CO 80237
> Ph: 720.445.5655
> Email: mvcarminati@ndh-law.com
>
> */s/John M. Shoreman*
> John M. Shoreman
> Bar No.: 407626
> Mcfadden & Shoreman, LLC
> 1050 Connecticut Avenue, NW
> Washington, DC 20036

Ph. 202-772-3188/202-204-8610 FAX
Email: jmshoreman@verizon.net

## VERIFICATION

I declare (or certify, verify, or state) under penalty of perjury under the laws of the

United States of America that the foregoing is true and correct.

Executed on ____March 5____, 2020.

_Osman Donald Cerrato Gonzalez_
Osman Donald Cerrato-Gonzalez